UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                           Criminal No. 11-cr-20321

             Plaintiff,

v.                                    Hon. Mark A. Goldsmith

GEORGE BALCEWICZ, III,

             Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 (Dkt. 55), VERIFIED MOTION FOR LEAVE TO FILE AMENDMENT TO § 2255 PETITION (Dkt. 65), and MOTION TO EXPEDITE (Dkt. 74), and GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

**I.      INTRODUCTION**

Defendant George Balcewicz, III filed the instant motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. Def. Mot. (Dkt. 55). He claims that his attorneys were deficient during his criminal proceedings. The Government, at the Court's request, filed a response (Dkt. 61), and Defendant filed a reply (Dkt. 62). The parties also filed supplemental briefs (Dkts. 70, 72).

While the motion was pending, Defendant filed two additional motions: (1) a motion for leave to file an amended motion under 28 U.S.C. § 2255 based on his counsel's failure to file an appeal (Dkt. 65), and (2) a motion for an expedited decision on the pending motions (Dkt. 74).

Because the Court concludes that Defendant has not shown (i) that his attorneys were constitutionally deficient, nor (ii) that his motion to amend is timely or relates back to the

original motion, as discussed below, the Court denies Defendant's motions. However, the Court grants a certificate of appealability in part.[1]

## II.   BACKGROUND

Defendant was indicted, in May 2011, on eight counts of willful evasion of tax assessment, in violation of 26 U.S.C. § 7201. Indictment (Dkt. 3). The indictment charged that Defendant earned income between 2001 and 2008, but that he willfully attempted to evade paying federal taxes on that income by completing false W-4 forms and submitting false and delinquent Form 1040s. Id. Each count of the indictment corresponded to a year in which Defendant allegedly evaded his tax obligations. Id. For example, count one alleged Defendant evaded his tax obligations for 2001, count two alleged he evaded his tax obligations for 2002, etc.

The case went to trial in late January 2012, and, on February 1, 2012, the jury found Defendant guilty on all eight counts. See Jury Verdict Form (Dkt. 33). Throughout the pre-trial proceedings and trial, Defendant was represented by appointed counsel, Kenneth Sasse. However, due to a breakdown in the attorney-client relationship, Mr. Sasse requested to withdraw as counsel; this occurred after trial but before sentencing. Mot. for Withdrawal (Dkt. 37). The Court granted the motion (Dkt. 41) and initially appointed the Federal Defender to represent Defendant (Dkt. 42). However, attorney Richard Ginsberg was appointed in place of the Federal Defender thereafter. See CJA 20 (Dkt. 43). Approximately three months later — in September 2012 — attorney Douglas Mullkoff replaced Mr. Ginsberg as Defendant's counsel.

---

[1] Given that the Court issues its decision and denies Defendant's motions, it denies Defendant's motion to expedite (Dkt. 74) as moot. Moreover, Defendant claims he is seeking an expedited decision because it is "unclear . . . what legal resources . . . will exist" at a halfway house to which he was being released. Id. The Court does not find this reasoning sufficient for requiring an expedited decision; Defendant's argument is speculative and he fails to explain why a possible change in legal resources requires an expedited decision on the already-pending motions.

The Court sentenced Defendant on December 19, 2012.  The Court found that the tax loss was in excess of $80,000 based on the federal tax loss and unpaid state taxes combined, which resulted in a criminal offense level of 16 under the sentencing guidelines.  Sentencing Tr. Vol. II at 9 (Dkt. 67).  Combining this offense level with criminal history category one, the guideline imprisonment range was 21 months to 27 months, which the Court explained was advisory, not mandatory.  Id. at 9-10.  The Court subsequently sentenced Defendant to 27 months imprisonment for each of the eight counts, all to run concurrently, as well as three years of supervised release on each count, also to run concurrently.  Am. J. at 3-4 (Dkt. 54).  The Court also imposed restitution of $168,911.00, among other conditions.  Id. at 5-6.

Defendant timely filed a motion pursuant to 28 U.S.C. § 2255, alleging that both his trial counsel and counsel at sentencing were ineffective.  Def. Mot. at 4-5.  He subsequently filed a motion for leave to amend his section 2255 motion, claiming his counsel also was ineffective for failing to file a timely notice of appeal.  Def. Mot. for Leave (Dkt. 65).

### III.     28 U.S.C. § 2255 MOTION STANDARD

Pursuant to 28 U.S.C. § 2255(a), a "prisoner in custody under sentence of a" federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."  Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (citing Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993)).

Where a factual dispute exists concerning the claims raised in a defendant's section 2255

motion, the Sixth Circuit has outlined the requirements for obtaining a hearing:

> In reviewing a § 2255 motion in which a factual dispute arises, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999). "[T]he burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light." Id. More is required, however, than mere assertions of innocence. See id. ("[I]t would be nonsensical to conclude that the petitioner could meet that burden simply by proclaiming his innocence."). Nevertheless, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." . . . Stated another way, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."

Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (some citations omitted).

## IV.    ANALYSIS

## A.  MOTION TO VACATE OR AMEND PURSUANT TO § 2255 (Dkt. 55)

Defendant's motion is premised on a claimed ineffective assistance of counsel by both

his trial counsel and his counsel at sentencing.  In his original motion, Defendant raises three

grounds to support his claims of ineffective assistance of counsel: (i) trial counsel did not

challenge evidence regarding the amount of taxes owed, which Defendant claims was less than

put forward by the Government; (ii) trial counsel did not introduce evidence that Defendant had

provided to counsel, which Defendant "believe[s] . . . would have resulted in a different outcome

at trial"; and (iii) sentencing counsel did not apply the correct sentencing guidelines in effect at

the time of trial.  Def Mot. at 5 (Dkt. 55).

Because Defendant's claims are based on an alleged ineffective assistance of counsel,

Defendant must satisfy the test set forth in Strickland v. Washington, 466 U.S. 668 (1984), to

4

obtain relief.   See Ballard v. United States, 400 F.3d 404, 407 (6th Cir. 2005) (applying Strickland standard to claims brought pursuant to 28 U.S.C. § 2255).   "The Strickland test involves two prongs: the 'performance prong,' where a petitioner is required to show that her attorney's representation 'fell below an objective standard of reasonableness,' . . . and the 'prejudiced prong,' which requires the petitioner to demonstrate that there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"   Id. (emphasis in original) (citing Strickland, 466 U.S. at 668).   Both prongs must be satisfied for Defendant to obtain relief, and the Court may address the prongs in either order.   See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

In evaluating the performance prong, a "court's scrutiny must be highly deferential." Ballard, 400 F.3d at 407 (quotation marks, citations, and ellipses omitted).   The Supreme Court made clear in Strickland that there is a "strong presumption" that the accused counsel's conduct is reasonable.   Strickland, 466 U.S. at 689.   As for the prejudice prong, the Court must be convinced that there is "a reasonable probability" that "the result of the proceeding would have been different" but for counsel's errors.   Ballard, 400 F.3d at 409 (quotation marks and citation omitted).

With these standards in mind, the Court addresses each of Defendant's arguments in turn.

### 1.  Government Evidence of Tax Deficiency

Defendant first argues that trial counsel was ineffective because he "did not challenge key prosecution evidence for accuracy under the rules of evidence."  Def. Mot. at 5.  Defendant claims that, "[a]ccording to documents dated July 18, 2013 from the IRS, the balance due and

owing is $65,443.44 including interest and penalties, not the $168,111.00 alleged by the prosecution." Id.  Defendant also contends, without explanation, that "for tax years 2001 [and] 2002 there was a $0.00 tax loss balance before we went to trial," which should have resulted in a dismissal of counts one and two of the indictment.  Id.  In support of these claims, Defendant attaches to his motion IRS responses from Defendant's "inquiry of June 26, 2013" that discuss the balances for 2002-2005 and 2007-2008 "due as of July 18, 2013."  See IRS Responses (Dkt. 55 at 7-21 of 37 (cm/ecf pages)).

The Government responds that Defendant is confused and that the $168,111.00 is the amount of restitution ordered by the Court, not the amount of tax loss.  Gov't Resp. at 7-8.  The Government also argues that the tax deficiency resulting in Defendant's conviction was the amount of money Defendant owed at the time he was required to file his tax return each year, not how much was due at or after trial.  Id.  In other words, the Government argues that "[D]efendant's theory of ineffectiveness rests on his mistaken assumption that his current balance with the IRS is equivalent to the tax deficiency at the time his 2001 through 2008 taxes were due," but that, in reality, "[t]he relevant inquiry is not how much the IRS says that [D]efendant owes today . . . but whether [D]efendant had a tax due and owing on the date his taxes were due."  Id. at 8, 10.  In reply, Defendant continues to argue that the IRS documentation he received in 2013 shows that the total amount due is actually $45,414.00, and that this reduced tax loss should have resulted in a sentencing range of 15 to 21 months.  Def. Reply at 1.

The Court agrees with the Government that Defendant is confusing restitution with tax loss, and that he is mistaken regarding the amount the Court should have considered for purposes of applying the sentencing guidelines.[2]  Defendant's argument relies on credits to which he

---

[2]  Given that Defendant's conviction for evasion does not require the Government to prove a precise amount to support a conviction, see United States v. Heath, 525 F.3d 451, 456-457 (6th

became entitled (and that he received) after the initial tax deficiency was incurred. For example, evidence at trial showed that Defendant did file tax returns for the previously omitted years in 2009 as a condition to being allowed to pursue bankruptcy, although he calculated, incorrectly, his tax liability as approximately 6%. Trial Tr. Vol. II at 57-58, 68-69, 131 (Dkt. 45). Even after filing these delinquent tax returns, however, Defendant appears to have made no actual payments to the IRS. Id. at 61. Nevertheless, in years after 2009, Defendant was entitled to a refund, which the IRS used to reduce some of his previous tax liability. Id. at 63.

However, as the Government highlights, the correct amount for calculating Defendant's "tax loss" under the sentencing guidelines was not the amount due at trial, but rather the amount due on the day that Defendant failed to file his tax returns. See United States v. Daniel, 956 F.2d 540, 542 (6th Cir. 1992) ("[W]hen a taxpayer fails to file a federal income tax return and the government can show a tax liability pursuant to the tax code, a tax deficiency within the meaning of section 7201 arises by operation of law on the date that the return is due to be filed."); United States v. Tandon, 111 F.3d 482, 490 (6th Cir. 1997) (noting that considering subsequent payments would "lead to the perverse result of allowing any criminal to nullify much of the burden of his crime simply by paying the tax liability once the IRS had begun to audit or investigate."). Indeed, even the sentencing guidelines in effect at the time of Defendant's trial and sentencing made clear that in calculating the tax loss for sentencing purposes, "[t]he tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." See U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2T1.1(c)(5). The amount due and owing at the

---

Cir. 2008) (discussing the elements required to support a conviction for tax evasion); see also United States v. Reed, 821 F.2d 322, 325 (6th Cir. 1987) (stating that the requirement for deficiency is met if taxes owed are more than zero); United States v. Bencs, 28 F.3d 555, 564 n.9 (6th Cir. 1994) (Government need not prove precise amount owed), Defendant fails to explain how the result of trial (i.e., conviction on the counts for which Defendant admits a balance was owed) would have been different had his counsel challenged the Government's evidence.

time each count arose by operation of law totaled $78,995.00.  The Court considered this calculation, in combination with the state taxes Defendant owed, in determining that the tax loss at issue was more than $80,000 but less than $200,000, resulting in an offense level of 16.  See U.S.S.G § 2T4.1.

For this reason, the Court also does not find Defendant's submission of IRS statements from July 2013 to be persuasive or to require an evidentiary hearing.  The statements make clear that the balances listed are the amounts "DUE AS OF JULY 18, 2013."  See, e.g., IRS Statement Regarding 2002 Taxes Due (Dkt. 55, 7 of 37 cm/ecf page); see also id. at 9 (cm/ecf page) ("TOTAL BALANCE (AS OF 7-18-2013)").  These statements account for payments and credits (e.g., refunds), which as explained, are inappropriate for the Court to consider in calculating "tax loss" under the sentencing guidelines to the extent they were made subsequent to the commission of the offense.  Moreover, the Court notes that the statements are based in part on Defendant's 2009 "Form[s] 1040A," which contained incorrect calculations based on an incorrect tax rate.  Accordingly, while the statements may reflect what Defendant would owe as of July 18, 2013 based on the information he provided in his delinquent 1040A forms, the record reflects that those forms were wrong and filed after the due date.  Therefore, the July 2013 IRS statements are not an accurate reflection of what Defendant actually owed had the 1040A Forms been accurately and timely completed.[3]

The Court further notes that, other than the 2013 statements, Defendant fails to specify what errors or inaccuracies he believes exist in the Government's trial figures.  Rather, he simply

---

[3]   Notably, the IRS statements Defendant submitted are incomplete; for example, although Defendant has submitted statements regarding his tax liability for certain years, he has omitted any such statement regarding his liability for 2006.  The Court highlighted this for Defendant in its January 9, 2014 Order, but Defendant did not remedy this deficiency in any subsequent filings.

makes conclusory assertions that the numbers are wrong.  However, the Government's witness thoroughly explained the numbers during trial, see Trial Tr. Vol. II at 118, and the Government attached an affidavit to its supplemental brief attesting to the numbers' accuracy.  Moreover, even Defendant's own tax calculations, based on tax returns he completed only a few months ago from jail, still show tax deficiencies owed for the relevant years, including his calculations for the income and amounts owed in 2001 and 2002, even though Defendant claims the supposed evidence at issue would have shown a zero-dollar tax liability for those years.[4]  See Def. Tax Forms (Dkt. 72, 5-62 of 63 cm/ecf page).  Therefore, Defendant's suggestion that his trial would have been different had his attorney challenged the Government's evidence is without merit.[5]

## 2. Documents Provided to Trial Counsel

Defendant next argues that trial counsel was ineffective because Defendant supplied his counsel with certain documents, but counsel did not use them during trial.  In particular, Defendant identifies the following documents, although he does not provide a description of their contents: "my 1998, 1999, 2000 tax returns, IRS publication 469, statements from IRS showing ZERO ($0.00) balance in 2004, letter from IRS refusing to negotiate payment plan."  Def. Mot.

---

[4]  Moreover, even if Defendant had a zero tax liability in 2001 and 2002 at the time of trial due to subsequent credits, that does not mean he did not have a tax liability when those taxes were originally due and his criminal liability was triggered, i.e., in April 2002 and 2003.  See Daniel, 956 F.2d at 542.

[5]  To the extent Defendant is not challenging his conviction, but rather challenging the amount of his restitution, the Court rejects this argument, as well.  After refunds, Defendant owed $75,240.00 at the time of sentencing.  His penalties and interest for non-payment totaled $93,671.00.  Accordingly, the Court ordered restitution in the amount of $168,911.00, but stated that the amount could change based on future credits and payments, and accruing interest and penalties.  See Sentencing Tr. Vol. II at 23-24, 29 ("The Court will find that the base amount of restitution owed to the IRS which the defendant is ordered to pay is 168,911 dollars subject to adjustments for accrual of penalties and interest as well as payments defendant has made or refunds to which he may be entitled.").

at 5. Defendant asserts, in conclusory fashion, that he "believe[s] these documents would have resulted in a different outcome at trial" had they been introduced. Id.

The Government first responds that Defendant has made no effort to describe the contents of the documents or articulate their significance, but it appears from their description that they would have "no relevance in [D]efendant's trial as they appear to deal with events that occurred either before or after the relevant time period of [D]efendant's evasion." Gov't Resp. at 11. In the alternative, the Government argues that, even if the documents were relevant, Defendant has failed to establish the prejudice prong of the Strickland test because Defendant's only evidence of prejudice is his "bald claim that [he] 'believe[s] these documents would have resulted in a different outcome at trial.'" Id. at 11-12.

In reply, Defendant contends that "[p]resentation of the documents would have resulted in a jury instruction based on the defense's theory of a defense supported by the presentation of the documents." Def. Reply at 2. He claims that these documents may have been used to question the credibility of the Government's documents and witness testimony. Id. However, Defendant also acknowledges that "[t]here is no way at this time to determine what effect there would have been on the jury or deliberations" had the documents been introduced. Id.

Defendant claims that the missing documents are in his former counsel's possession and that is why he is unable to attach them to his motion. Def. Mot. at 5. Even assuming this to be true, however, Defendant fails to explain the contents of these documents, the information within them that he believes undermines the Government's credibility, or why they would further his defense.[6] Although Defendant may not be able to provide the physical documents, he should at

---

[6] Defendant claims in his reply that the documents could have led to the giving of a jury instruction, although he fails to explain what type of instruction this would have been. Def. Reply at 2. The case upon which Defendant relies — United States v. Duncan, 850 F.2d 1104 (6th Cir. 1988) — discusses giving a jury instruction on the defense of good-faith reliance. To

least be able to describe their contents to the extent he claims that the failure to introduce them prejudiced his case.  Here, Defendant does not articulate a satisfactory description.[7]

Instead, Defendant relies on a conclusory statement that he "believe[s] these documents would have resulted in a different outcome at trial."  Def. Mot. at 5.  However, even Defendant backs away from that statement in his reply, noting that "[t]here is no way at this time to determine what effect there would have been on the jury or deliberations."  Def. Reply at 2.  These conclusory and speculative statements, without more detail about the documents' contents and how they would have affected the outcome of the trial, cannot suffice to support a claim for ineffective assistance of counsel, or even to warrant an evidentiary hearing.  See Cross v. Stovall, 238 F. App'x 32, 39-40 (6th Cir. 2007) ("Cross's ineffective assistance claim is doomed by the fact she makes nothing more than conclusory assertions about actual prejudice.  Her conclusory assertions fall far short of showing actual prejudice."); Sturm v. Superintendent of Indian River Juvenile Correctional Facility, 514 F. App'x 618, 626-627 (6th Cir. 2013) (holding that argument amounting only to "speculation, not a 'reasonable probability' of a different outcome" was insufficient) (citing Harrington v. Richter, 562 U.S. 86 (2011) ("The likelihood of a different result must be substantial, not just conceivable.")); see also Valentine, 488 F.3d at 333 ("[N]o

the extent this is the instruction Defendant claims would have been given, he fails to explain why his documents would have warranted such an instruction.  To the extent Defendant seeks an instruction on good faith, as opposed to good-faith reliance in particular, the Court notes that it gave such an instruction to the jury.  See Trial Tr. Vol. III at 79-80 (Dkt. 46).

[7] In his reply to the Government's supplemental response, Defendant does argue that trial counsel's "failure to question the accuracy of [the] Government-authored returns, rather than to insist on using the actual return for tax year 2000 (reflecting that Balcewicz received a full refund for that year) . . . materially prejudice[d]" him.  Def. Supp. Resp. at 2 (Dkt. 72).  Defendant fails to fully explain the contents of this purported return, explain in detail why it differed from the purportedly "Government-authored returns," or explain why it was accurate and/or based on a good-faith belief in its accuracy.  Moreover, to the extent Defendant actually received a full refund in 2000, versus simply claiming that he was entitled to one, the documents submitted by the Government would have reflected this; they did not.  See Trial Tr. Vol. I at 27-28 (Dkt. 44) (noting that Defendant received a partial refund in 2000 of federal taxes withheld).

hearing is required if the petitioner's allegations cannot be accepted as true because they are . . . conclusions rather than statements of fact." (citation omitted)); United States v. Busch, 411 F. App'x 872, 877 (6th Cir. 2011).

**3. Sentencing Guidelines**

Defendant's last argument in his original motion was that the "[s]entencing guidelines at [the] time of trial were not properly applied and calculated." Def. Mot. at 5. Defendant argues that counsel "should have applied amendment #491 in appendix C of the guidelines." Id. The Government responds that this amendment, to the extent not altered, took effect in 1993 and, thus, was incorporated in the 2011 Guidelines Manual used at Defendant's sentencing. Gov't Resp. at 13.

Defendant fails to explain why the Guidelines Manual used at his sentencing was wrong. As the Government recognizes, Amendment 491 was incorporated into the sentencing guidelines in 1993. To the extent this amendment has not been altered, its changes would have been reflected in the Guidelines Manual. However, Defendant's suggestion that a tax loss of over $40,000 would have resulted in a base offense level of 13 under the amendment has been modified; for example, amendment 617 (effective November 1, 2001) removed the $40,000 threshold, and instead made a tax loss over $30,000 but not more than $80,000 a base offense level of 14.

To the extent Defendant argues the Court should have applied the 1993 amendment based on his conviction for count one, i.e., the incidence of tax evasion for 2011, the Court similarly rejects this argument. In 2001, an amendment to section 2T4.1 went into effect that changed the tax table. Under the 1993 amended range, a tax loss over $40,000 but not more than $70,000 resulted in a base offense level of 13, a tax loss over $70,000 but not more than $120,000

12

resulted in a base offense level of 14, and a tax loss over $120,000 but not more than $200,000 resulted in a base offense level of 15. Under the amended guideline range in effect as of November 1, 2001 (amendment 617), a tax loss over $30,000 but not more than $80,000 resulted in a base offense level of 14, and a tax loss over $80,000 but not more than $200,000 resulted in a base offense level of 16. See U.S.S.G. § 2T4.1.

The Court first notes that, because Defendant continued to evade paying taxes after the 2001 tax year, and after the 2001 amendment went into effect, his criminal conduct was ongoing. Defendant further evaded taxes after the 2001 tax year and after the amendment went into effect; he was convicted of these offenses, thereby suggesting that the application of the 2001 amendments to the tax loss table in section 2T4.1 did not violate the ex post facto clause. See United States v. Lewis, 235 F.3d 215, 217-218 (4th Cir. 2000) (explaining that amendments subsequent to an act of tax evasion may apply to an earlier act of tax evasion when the defendant commits similar acts of evasion thereafter); see also U.S.S.G. § 1B1.11(b)(3) and Background; U.S.S.G. § 2T1.1, Application Note 2. Moreover, the Court notes that Defendant's sentences on counts one through eight are concurrent. There can be no dispute that the post-November 2001 guideline table applied to the convictions on counts two through eight. Defendant has thus failed to show any prejudice resulting from this alleged deficiency. Therefore, this claim has no merit.

Because Defendant has failed to substantiate the required claims of prejudice under Strickland with anything other than conclusory statements of law or facts, which are contradicted by the existing record, relief is unwarranted and Defendant is not entitled to an evidentiary hearing.

**B. MOTION FOR LEAVE TO AMEND (Dkt. 65)**

13

While briefing was ongoing on Defendant's original § 2255 motion, Defendant filed a "verified motion for leave to file amendment to § 2255 petition" on February 18, 2014. Def. Mot. for Leave (Dkt. 65). Defendant claimed that he received copies of all sentencing memoranda filed in the case on February 10, 2014, and that this led to the identification of a further issue: "Whether trial counsel was ineffective in its failure to timely file a notice of direct appeal following sentencing." Id. Defendant argues that his counsel should have distinguished case law from another circuit saying that penalties and interest are appropriately considered at sentencing, and that, at sentencing, his attorney "urged [him] to forego filing a notice of direct appeal which Balcewicz reluctantly agreed to do." Id. at 2-3.

If this had been Defendant's original motion filed under section 2255, the Court notes that it would have been untimely. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, sets a 1-year period of limitation on motions filed pursuant to section 2255. In particular, section 2255(f) provides, as follows:

> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of --
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Here, the amended judgment was entered on January 9, 2013 (Dkt. 54). Defendant had fourteen days to appeal, but did not do so. Therefore, Defendant's filing on February 18, 2014 was beyond the one-year deadline.[8]

But this is not Defendant's initial filing. Rather, Defendant is seeking to amend his original § 2255 motion, which was timely filed. Because Defendant's amendment would otherwise be untimely under the AEDPA, Federal Rule of Civil Procedure 15(c) would have to apply to avoid the statute-of-limitations issue. See Oleson v. United States, 27 F. App'x 566 (6th Cir. 2001) (applying Rule 15 to a motion brought pursuant to section 2255); see also 28 U.S.C. § 2242 (federal rules apply to question of whether amendment to habeas petition relates back). That Rule permits an amendment to "relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court, in interpreting this Rule's application to habeas petitions, has explained that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). In other words, there must be a "common core of operative facts uniting the original and

---

[8] Although the AEDPA contains this one-year limitation, a court may equitably toll this deadline under certain circumstances. See Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 749-750 (6th Cir. 2011). Defendant has not requested equitable tolling, nor is there any factual circumstance that prevented him from timely filing an amended motion. Although Defendant claims that he received the sentencing documents in February 2014, there is no indication that he attempted to obtain these documents sooner but was unable to do so. Moreover, to the extent Defendant's motion relies on a claim that his attorney should have appealed a ruling by the Court, the Court notes that Defendant was present for all of the Court's rulings regarding sentencing, and he was informed during sentencing that he had 14 days to appeal his conviction and sentence. See Sentencing Tr. Vol. II at 30. However, Defendant concedes that he "agreed" to forego filing a notice of appeal. Accordingly, the Court does not find equitable tolling applicable here.

15

newly asserted claims." Id. at 659 (internal quotation marks and citation omitted).  A claim that simply arises out of the same conviction and judgment is insufficient.

Here, Defendant's original motion and his requested amendment share a common legal theory: ineffective assistance of counsel.  However, this is insufficient because the "theories of ineffective assistance raised in the amended motion are different theories of ineffective assistance and based on facts different from those underlying the timely ineffective assistance of counsel claims."  See Atchley v. United States, No. 08-17, 2011 WL 1532074, at *2 (E.D. Tenn. Apr. 21, 2011); see also United States v. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999) ("Failing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue.").  Defendant's original motion claimed theories of ineffective assistance of counsel based on an alleged failure to challenge certain evidence at trial, introduce other evidence at trial, and argue for a sentencing amendment to apply that modified the amounts required for different base offense levels under the tax loss table.  Defendant's proposed amended motion claims ineffective counsel based on a failure to appeal regarding whether penalties and interest should have been included in the tax-loss calculation.  These are claims that do not share common facts; to the contrary, they concern different time periods and underlying issues entirely.  See Pinchon v. Myers, 615 F.3d 631, 640-643 (6th Cir. 2010) ("[A]n amended habeas petition does not relate back where it asserts a new ground for relief supported by facts that differ from those in the original petition.").  The Court, thus, concludes that Defendant's motion does not qualify for the relation-back allowance under Rule 15(c).

Moreover, even if the amended petition related back under Rule 15(c), the Court would deny the motion based on the strict requirements of Strickland.  Defendant argues that his

16

counsel should have appealed and distinguished a case from the First Circuit cited by the Government — United States v. Thomas, 635 F.3d 13 (1st Cir. 2011). In that case, the First Circuit reviewed whether the trial court erred in including penalties and interest in the tax-loss calculation, even though Defendant only pled guilty to evading the assessment of taxes, rather than evasion of payment of tax liability. Id. at 16-17. The First Circuit noted that, under U.S.S.G. § 2T1.1, comment note 1, penalties and interest normally are not included in the calculation of tax loss, except in "willful evasion of payment cases." Id. However, the First Circuit concluded that the district court still properly considered the penalties and interest from Defendant's evasion of payment, even though he was not charged or convicted of this crime, because this was "relevant conduct" the court could consider under the guidelines for evasion of assessment. Id. at 16-18.

With respect to Strickland's requirement of a showing of a deficiency by counsel, Defendant fails to explain how his counsel should have distinguished Thomas. Instead, Defendant argues, rather conclusory, that,

> In neither his December 6, 2012 filing [sentencing memorandum] nor at sentencing did Attorney Mullkoff seek to factually distinguish Thomas from the instant case. Moreover, Attorney Mulkoff could have, but chose not to, cite and argue that additional Circuit cases holding that, on facts more consistent with the instant case, relevant conduct activity that is not specifically found beyond a reasonable doubt by a jury should not be used to enhance a sentence.

Def. Mot. at 2-3. But Defendant fails to specify what this "additional Circuit" authority is, or how Thomas is factually distinguishable.[9] Therefore, the Court finds that Defendant has not sufficiently alleged a deficiency that warrants relief under Strickland.[10]

---

[9] Defendant does suggest that the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013) — a non-tax case — would have required a different result. The Supreme Court held in that case that any fact that increases a statutory mandatory minimum sentence for a crime

Furthermore, even if Defendant had sufficiently alleged a deficiency in counsel's failure to distinguish Thomas or file a notice of appeal on this issue, Defendant has not shown, or even alleged, sufficient prejudice to warrant relief.  First, the Court notes that the Government did not cite Thomas to show that penalties and interest should be included within the tax-loss calculation; rather, the Government cited Thomas in support of its argument that the amount of unpaid state taxes should be included within the tax-loss figure.  Gov't Supp. Sentencing Mem. at 5-7 (Dkt. 50).  In other words, the Government simply used Thomas to show that "conduct that is not formally charged or is not an element of the offense of conviction," such as unpaid state taxes, can be included in the tax-loss determination.  Id.  Defendant's counsel did file a sentencing memorandum arguing against this point, see Def. Supp. Sentencing Mem. (Dkt. 51), and the Court overruled Defendant's objection at sentencing, see Sentencing Tr. Vol. II at 6-8. Defendant does not challenge that ruling or the decision not to appeal that ruling.

---

is an "element" of the crime that must be submitted to the jury, not a "sentencing factor" that the Court can determine.  But that case concerned increases in the statutory mandatory minimum; it does not apply to increases in the sentencing guidelines.  See id. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury."); United States v. Smith, 749 F.3d 465, 487 (6th Cir. 2014) (Alleyne does not apply when judges increase applicable Guideline ranges based on findings related to the amount of loss and the number of victims); Rogers v. United States, 561 F. App'x 440, 443-444 (6th Cir. 2014) ("Because the federal sentencing guidelines are advisory, rather than mandatory, . . .  judicial factfinding that affects the guidelines calculation does not fit within the category of facts required under Alleyne to be found by a jury beyond a reasonable doubt.").  Furthermore, "the constitutional rules of criminal procedure adopted in Alleyne . . . are not applicable on collateral review of [Defendant's] sentence, because the judgment became final before the Court's decision in Alleyne."  Rogers, 561 F. App'x at 443-444; see also In re Mazzio, 756 F.3d 487, 489-490 (6th Cir. 2014) (rule announced in Alleyne not made retroactive to cases on collateral review).

[10]  Notably, defense counsel did object to the original presentence investigation report, claiming that neither state taxes nor penalties and interest should be included in the tax-loss calculation. Therefore, to the extent Defendant's claim is based on a purported failure to raise the issue of the inclusion of penalties and interest at all, versus a failure to appeal, the Court rejects this argument as meritless.

Second, even if penalties and interest were inappropriately included in the tax-loss calculation, and <u>Thomas</u> is distinguishable or should not be followed, Defendant has failed to explain how his sentence would have been different, i.e., how he was prejudiced.[11]  Under the guidelines in effect at the time of Defendant's sentencing, a tax loss greater than $80,000 but less than or equal to $200,000, resulted in a base offense level of 16.  Even eliminating penalties and interest, the amount of taxes owed at the time of the crime, plus the amount of unpaid state taxes, still resulted in a tax loss greater than $80,000 but less than $200,000.  In other words, with or without the inclusion of penalties and interest in the tax-loss calculation, Defendant's base offense level remains 16.  Therefore, Defendant has not shown how he was prejudiced by counsel's purported failure to distinguish <u>Thomas</u> or file a notice of appeal on this issue.  <u>See</u> <u>Albert v. Ludwick</u>, No. 08-13419, 2009 WL 2044255, at *4 (E.D. Mich. July 6, 2009) (denying ineffective assistance claim where petitioner had "not shown that his offense variable level would have changed, or consequently, that his guidelines range would have changed"); <u>see</u> <u>also</u> <u>Spencer v. Booker</u>, 254 F. App'x 520, 525 (6th Cir. 2007) ("Where ineffective assistance of counsel at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney."); <u>Counterman v. United States</u>, No. 08-142, 2009 WL 3585942, at *4 (W.D. Mich. Oct. 27, 2009) (finding no prejudice where offense level would have remained the same even under petitioner's theory).

Accordingly, the Court denies Defendant's verified motion for leave to file amendment to § 2255 petition (Dkt. 65).

## C.  CERTIFICATE OF APPEALABILITY

---

[11]  Notwithstanding Defendant's concerns regarding his counsel's strategy with respect to the inclusion of interest and penalties in the tax-loss figure, the Court notes that Defendant fails to identify anything in the record that suggests the Court considered penalties and interest when determining tax loss.

To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.  See Slack v. McDaniel, 529 U.S. 473, 483–484 (2000).

Having denied Defendant's motions on the merits, the Court must make a determination as to whether the issuance of a certificate of appealability is warranted.  Although the Court believes that its decision not to hold an evidentiary hearing on Defendant's claims is the correct holding, such holding is at least debatable.  Therefore, the Court grants Defendant a certificate of appealability as to whether the Court should have conducted an evidentiary hearing.  See 28 U.S.C. § 2253(c)(2).  The Court also permits Defendant to proceed in forma pauperis on appeal because an appeal could be taken in good faith.  See Fed. R. App. P. 24(a).

## IV. CONCLUSION

The Court denies Defendant's motion under 28 U.S.C. § 2255 (Dkt. 55) and verified motion for leave to file amendment to § 2255 petition (Dkt. 65).  Correspondingly, the Court denies Defendant's motion to expedite (Dkt. 74) as moot.  The Court grants in part a certificate of appealability under 28 U.S.C. § 2253(c)(2).

SO ORDERED.


                                        s/Mark A. Goldsmith
Dated: September 30, 2014               MARK A. GOLDSMITH
        Detroit, Michigan               UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2014.

<div style="margin-left:40%">

s/Johnetta M. Curry-Williams
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER

</div>